**UNITED STATES of America**

*v.*

**Johnnie FLUELLEN and Leroy Lewis.**

**Crim. No. 74–753.**

United States District Court,
E. D. Pennsylvania.

July 8, 1975.

---

Robert E. J. Curran, U. S. Atty., Alan M. Lieberman, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Mitchell S. Lipschutz, Philadelphia, Pa., A. Charles Peruto, Philadelphia, Pa., for Fluellen.

Edward H. Weis, Philadelphia, Pa. (Defender Assn. of Phila.), for Lewis.

## MEMORANDUM OPINION

BECHTLE, District Judge.

Presently before the Court is the motion of defendant Johnnie Fluellen for judgment of acquittal and/or for a new trial. Defendant Fluellen was charged in Count IV of a four-count indictment with conspiracy to distribute drugs, in violation of 21 U.S.C. § 841. His codefendant, Leroy Lewis, was also singly charged in the other three counts of the indictment with specific sales of heroin on three specific days, all of which were included within the conspiracy period of Count IV. The case was tried for four days before a jury, and it concluded on February 10, 1975, at which time the

jury returned a verdict of guilty against both defendants.[1] Defendant Fluellen filed the within motion for a new trial and/or for judgment of acquittal in respect to his conviction on Count IV, and he cites various grounds in support of the motion. A brief summary of the facts upon which the jury returned its verdict is as follows:

### FACTS

An undercover officer of the Philadelphia Police Department affiliated with the Federal Drug Enforcement Administration met Fluellen on August 27, 1974, in the company of an unindicted person known as "Porgy" who was in the process of making a sale of heroin to the officer in the presence of Fluellen. During this transaction, the officer and Fluellen conversed and Fluellen advised that if the officer would contact him for heroin in the future he would not have to wait so long. At this meeting, "Porgy," in the presence of Fluellen, handed over a white slip of paper with the name "Johnnie" on it and a telephone number which was a telephone located at a bar in the vicinity. Fluellen told the officer at that time to call the number in advance of any intended purchases of heroin the officer expected to make. The officer testified that he called that number between August 27 and October 15, 1974, approximately three times. During one of those calls, in September, the officer testified that he talked to "Johnnie" and said he wanted to buy some heroin and Fluellen said that the only way it could be done would be for the officer to contact "Porgy" and "Porgy" would be the person to take the officer to Fluellen. When the officer protested that this additional step was unsatisfactory, Fluellen said, "Well, right now, that's the only way it can be done."

On October 15, 1974, the officer again called Fluellen at the same telephone number and he spoke to the defendant

1. On February 5, 1975, defendant Leroy Lewis entered a plea of guilty to Count III. The guilty verdicts of the jury returned on February 10, 1975, were as to Counts I, II and IV in regard to defendant Lewis. Sentence as to defendant Lewis was imposed on June 19, 1975.

and stated that he wanted to buy ten (10) bundles of heroin. The officer and Fluellen agreed upon a price and that the place for the transaction would be in front of a variety story at 7:00 p. m. that day. At the time and place agreed to, the defendant and the codefendant approached the officer and Fluellen informed the officer that he only had six (6) bundles and not ten (10). The officer agreed, whereupon Fluellen, pointing to codefendant Lewis, said, "My man here will bring him back." They left and, a few minutes later, codefendant Lewis returned alone with a brown paper bag that contained the heroin, for which the officer paid the agreed price.

The officer testified that he called the telephone number the next day, on October 16, 1974, and he spoke to Fluellen again. The officer told Fluellen he did not like the means by which these transactions were taking place, that is, having different persons deliver the heroin to him after he had made his agreement with Fluellen. He said too many people would know he was in the neighborhood to buy dope and would have money on his person. The defendant told him he had nothing to worry about because codefendant Leroy Lewis was his "Lieutenant."

The last contact was on the 21st of October when the officer, at approximately 7:00 p. m., went to the bar where Fluellen received the previous calls for the purpose of contacting the defendant in order to arrange for the purchase of some heroin the following night. Fluellen told the officer that if he wanted to make a purchase he should call the next evening. On the next evening, the officer returned again at approximately 7:00 p. m. and Fluellen and codefendant Lewis approached the officer's car, where Fluellen told the officer that Lewis would leave and return with ten (10) bundles of heroin. In a few moments, Lewis did return with ten (10) bundles of heroin and the officer paid him $600. A week later, the officer called Fluellen again in order to purchase a large quantity of heroin and they entered into a

transaction for the purchase of 30 bundles of heroin. The officer called Fluellen again on the telephone and the quantity was increased by the officer from 30 to 40 bundles. That evening at 7:00 p. m., Lewis brought 39 bundles and, at the time payment was to be made, the officer signaled to the other officers in surveillance and Lewis was arrested. Defendant Fluellen was arrested on November 7, 1974, and the indictment was returned on December 17, 1974.

### I. *Court's Questioning of a Witness:*

■ Defendant seeks a new trial because of denial by the Court of a motion for mistrial based upon the fact that the Court had engaged in some questioning of a witness. N.T. 2–30 to 2–34. The witness in question was a witness for the Government and defense counsel was in the midst of cross-examination. The rules governing this point are clearly enunciated in *United States v. DiVarco*, 484 F.2d 670, 675 (7th Cir. 1973), *cert. denied*, 415 U.S. 916, 94 S. Ct. 1412, 39 L.Ed.2d 470 (1974). That case points out that a United States District Judge has a duty to see that the trial does not become confusing or repetitious and, where he participates in questioning in order to clarify a particular point or episode without engaging in advocacy or displaying prejudice or partiality, no error can be predicated upon such examination. A defendant does not have a constitutional right to a confused trial. *See also, ABA Standards, Function of the Trial Judge* § 1.1(a), where it provides, in relevant part:

"The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his own initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial."

■ The Court also charged the jury that the fact that the Court occasionally asked questions should not be considered by them as having any special significance in regard to the areas the ques-

tioning covered. The Court charged, "During the course of the trial I occasionally asked questions of the witness in order to bring out facts that I did not think were being fully covered in the testimony. Do not assume that I hold any opinion on the matters in the areas to which my questions may have related. Remember at all times that you as jurors are at liberty to disregard all comments of the court in arriving at your own findings as to the facts in the case." N.T. 4–97. The motion for a new trial on this ground will be denied.

## II. *Verdict Against the Weight of the Evidence:*

■■ The Government is entitled to have all reasonable inferences resolved in its favor by reason of its being the verdict winner. *United States v. Newman,* 490 F.2d 139 (3rd Cir. 1974). A review of the testimony, the arguments of counsel, and the applicable authorities clearly demonstrates that there was more than ample evidence to support the verdict by which the defendant stands convicted. All questions of fact crucial to that determination were submitted to the jury and decided by them in accordance with their obligation as jurors, as outlined in the charge of the Court. Accordingly, defendant not advancing any particular grounds upon which such motion can be allowed, the motion will be denied.

## III. *Severance:*

Defendant Lewis was indicted on all four counts. The first three counts represent substantive offenses of selling drugs, in violation of 21 U.S.C. § 841. The fourth count is a conspiracy count and is the only count wherein defendant Fluellen is named. On the day of the trial, defendant Lewis offered a plea of *nolo contendere* to Count IV, to which the Government objected, and a plea of guilty to Count III. The Court sustained the Government's objection and Lewis pleaded guilty to Count III, which charged him with selling heroin on October 30, 1974. The conspiracy charged in Count IV covered the period October 15 to October 31, 1974, and, therefore, included the date upon which defendant Lewis pleaded guilty to the substantive count.

At the time of trial, defendant Fluellen moved for a severance. The grounds advanced were that he hoped to call defendant Lewis as a witness in defense of the charge against Fluellen. Lewis' counsel advised that his client intended to plead the Fifth Amendment, principally because while he admitted guilt as to an episode on October 30 he was unwilling to admit his guilt as to the conspiracy which included October 30, which ground the Court concluded was a plausible ground. In this framework, defendant contends that it was error not to sever to permit Fluellen to call Lewis as a witness in his behalf. Counsel was unable to outline to the Court what the testimony from Lewis would be if indeed he was required to testify.

In support of his motion that a severance should have been granted, Fluellen cites to the Court the case of *Byrd v. Wainwright,* 428 F.2d 1017 (5th Cir. 1970). A careful reading of that case indicates that it does not support the defendant's contentions on the record before this Court. Byrd, one of seven co-defendants, was indicted in April of 1966. In May, he moved for a severance and there were hearings between then and September when the case was tried. Byrd contended that while one of the other defendants had exculpated him in his confession, a second defendant who had inculpated him was prepared to testify that the confession was in error, and counsel for Byrd related to the court that he had heard conversations among the other defendants to the effect that Byrd was not even present during the commission of the crime. Because the exculpatory material was contained in certain of the co-defendants' confessions, there was a likelihood that the confessions themselves, though suppressed and not available as evidence against their authors,

nevertheless, would be available in a separate trial for Byrd. This removed the concern that an exercise by the confessors of their Fifth Amendment rights would in all events bar introduction of the exculpatory evidence at Byrd's separate trial. Defendant Fluellen can point to no exculpatory evidence, nor any anticipated or expected testimony from Lewis. To the contrary, Lewis' counsel advised that he would *not* testify but would exercise his rights under the Fifth Amendment. *See Smith v. United States*, 385 F.2d 34 (5th Cir. 1967). As stated in *Byrd v. Wainwright, supra* at 1022:

> "The court is not required to sever where the possibility of the codefendant's testifying is merely colorable or there is no showing that it is anything more than a gleam of possibility in the defendant's eye. 'The unsupported possibility that such testimony [exculpatory testimony of a codefendant] might be forthcoming does not make the denial of a motion for severance erroneous.' *United States v. Kahn*, 381 F.2d 824, 841 (7th Cir. 1967)."

 *A fortiori*, denial of the motion for severance cannot be erroneous when it is a *certainty* that the codefendant will not testify. It should be noted also that counsel for the defendant was counsel of record for three months, having appeared for defendant on November 7, 1974, and was aware of the identity of the codefendant, the allegations that he was charged with in the indictment, and his counsel. Despite such knowledge, defense counsel never fully consulted with or pursued to a conclusion the prospect or even the ability of codefendant Lewis to offer exculpatory testimony.

Passing from defendant's authorities to authorities in this Circuit on the question of severance, *see United States v. Harris*, 368 F.Supp. 697, 704, *aff'd*, 498 F.2d 1164 (3rd Cir. 1974). It is plain that, in order to be entitled to a new trial on the ground that the trial court abused its discretion in denying a motion for severance, the defendant must demonstrate with precision that he was prejudiced by the joint trial to such an extent that he was denied a fair trial altogether. In *United States v. Wolfson*, 289 F.Supp. 903, 908 (S.D.N.Y.1968), it was pointed out that defendants indicted together should be tried together; and this general rule is particularly appropriate when a conspiracy may be proved against the defendants by the same evidence resulting from the same or a similar series of acts. The motion for severance was properly denied before and during the trial, and will be denied at this time.

### IV. *Undue Psychological Burden:*

 Defendant's counsel contends that a mistrial should have been granted, because he was under an undue psychological burden. In this respect, the defendant complains that the Court in the presence of the jury made certain rulings that were prejudicial; specifically, defendant complains in respect to the Court's rulings in the presence of the jury appearing at N.T. 2–27 to 2–28 and 2–105 to 2–107. A reading of those rulings in context clearly demonstrates that the rulings were appropriate, proper, and necessary in order to prevent the jury from being confused as to their function in reviewing the evidence resulting from oral testimony from the witness stand. Furthermore, the Court specifically instructed the jury as to the extent to which they should consider the engagements of counsel and the Court during the course of the trial, with specific admonishment to the jury that no adverse inference should be drawn because of disagreement between the Court and counsel on a particular point or points. *See* N.T. 4–97, 4–98. Defendant's counsel also complains that he was under distress because of the Court's rulings in respect to a side-bar admonishment as to repetitious questioning on cross-examination. The episode appears at N.T. 3–93 to 3–102. To repeat that transcript in this Opinion

would not be useful, but it is worthwhile to note that a reading of that exchange clearly demonstrates the ever-constant need of the Court to convene with counsel at side-bar for the purpose of determining the means by which a trial shall progress. In this particular instance, the Court's warning at side-bar was to the effect that the Court sensed an ever-growing tendency of defendant's counsel to be overly repetitious. While counsel may have been distressed at that point, it is noted at N.T. 3–101 that Mr. Lipschutz at the end of the side-bar conference was apparently agreeable with the Court's expressed intention and was prepared to proceed after a brief recess, which was afforded in order to permit Mr. Lipschutz to take some medication. The motion on this ground will be denied.

### V. *Charge to the Jury:*

██ The defendant complained that the Court in charging the jury did not include in the charge a specific reference that the guilty plea by defendant Lewis was not to be considered as evidence against defendant Fluellen. A review of the charge in general discloses that the defendant received each and every instruction that he was entitled to receive under the prevailing law. More specifically, the Court charged at N.T. 4–104:

"A separate crime or offense is charged against each of the defendants. In other words, the evidence against Defendant Fluellen should be considered separately, apart from the evidence against Lewis, and the mere fact that you find your verdict in respect to Defendant Lewis should not control your verdict against Defendant Fluellen. It is your duty to give separate, personal consideration to the case of each individual defendant and in respect to each count in which a defendant is named.

"When you do so you should analyze what the evidence in the case showed with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his case determined from the evidence as to his own acts and statements and conduct and any other evidence in the case which might be applicable to him."

The motion of the defendant on this ground will be denied.

